# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| TAMARA WILLIAMS, on behalf of herself and all similarly situated persons, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| | | Case No. 2:20-cv-02402-JPM-tmp |
| v. | ) | |
| | ) ) | |
| THE LASIK INSTITUTE, LLC; JAMES RYNERSON, M.D.; JAMES M. RYNERSON, M.D. PSC; VISION GROUP HOLDINGS, LLC; AUDAX GROUP, LIMITED PARTNERSHIP; AUDAX MANAGEMENT COMPANY, LLC; LVI SUPER INTERMEDIATE HOLDINGS, INC.; LVI INTERMEDIATE HOLDINGS, INC. d/b/a VISION GROUP HOLDINGS, LLC; LVI HOLDCO, LLC; AG LVI HOLDINGS, LLC; 9597930 CANADA, INC.; MARK JAMIE COHEN; AVI A. WALLERSTEIN; MICHAEL C. FONDO; LISA ANN MELAMED; RAYMOND R. MONTELEONE; BEN L. COOK; MARK A. HOCKENSON; BILL WOLZ; CHRIS FOLSON; ERIKA JACKSON, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER GRANTING THE RYNERSON AND LVI DEFENDANTS' MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Before the Court are two Motions to Dismiss for failure to state a claim under Rule 12(b)(6).  The first was filed by Defendants James Rynerson M.D. and James M. Rynerson, M.D. PSC (collectively, the "Rynerson Defendants") on October 13, 2020.  (ECF No. 85.)  The second Motion was filed by Defendants The Lasik Vision Institute, LLC ("LVI"), LVI Intermediate Holdings, Inc., d/b/a Vision Group Holdings, LLC ("Vision Holdings"), and LVI Super Intermediate Holdings, Inc. ("LVI Super"); Mark Jamie Cohen and Avi Wallerstein (collectively, the "Canada, Inc. Control Person Defendants"); and Lisa Ann Melamed, Raymond R. Monteleone, Ben L. Cook, Mark A. Hockenson, William Wolz, Chris Folsom, and Erika Jackson (collectively, the "Vision Group Officer Defendants") (all collectively, the "LVI Defendants"), also on October 13, 2020.  (ECF No. 86.)  Each Motion seeks an Order dismissing Plaintiff's Second Amended Class Action Complaint ("Complaint") (ECF No. 75) with prejudice.  (ECF No. 85 at PageID 1189–90; ECF No. 87 at PageID 1233.)  For the reasons set forth below, both Motions to Dismiss are **GRANTED**.

## I.        BACKGROUND

### A. *Factual Background*

This is an action for undisclosed fee-splitting by a physician in violation of Tenn. Code Ann. §§ 63-6-225(a) & 63-6-226(a) and misrepresentation of services in violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-109(a)(1).  (Complaint, ECF No. 75 ¶¶ 1, 4.)  In July 2018, Plaintiff Tamara Williams ("Williams") "saw an LVI advertisement for eye correction surgery and made an appointment at LVI's Germantown clinic. She was seen by an OD who scheduled her for [photorefractive keratectomy ("PRK")] surgeries for both eyes."  (Id. ¶ 146.)  Plaintiff alleges that "[s]he was informed that Defendant Rynerson operated the James M. Rynerson PSC eye clinic, which was located inside LVI's space and that Dr. Rynerson would

perform her eye surgeries and be responsible for her care." (Id.)  Later in July 2018, Plaintiff underwent both PRK procedures with Rynerson. (Id. ¶¶ 149.)  Plaintiff alleges that prior to the procedures, at the request of "Rynerson (or his agents)," Plaintiff made a "$100 deposit to be paid to Defendant Rynerson PSC for her surgeries" and that "upon information and belief, this payment went into the Rynerson PSC bank account . . . ." (Id. ¶¶ 147–48.)  Plaintiff alleges that following her surgeries, "[t]he total medical charges to Plaintiff for Defendant Rynerson's medical services was $3,718 (less her $100 she previously paid to Defendant Rynerson PSC) for a net total of $3,618." (Id. ¶ 150.)  She alleges that she "financed Rynerson's medical fees through a credit lender known as CareCredit [and] has timely made all payments due under this arrangement." (Id. ¶ 151.)  Plaintiff alleges that she "reasonably believed that whatever funds that CareCredit would advance on her behalf for the medical services she received from Defendant Rynerson would be tendered to Defendant Rynerson PSC, just as she had paid her $100.00 deposit to Defendant Rynerson PSC" and that "[u]pon information and belief, CareCredit in fact did just this." (Id. ¶ 152.)

Plaintiff alleges that despite her belief that her payments would go to Rynerson PSC, LVI in fact kept most of the fees paid by her and the Class Members.  (Id. ¶ 70.)  Plaintiff bases many of the allegations in her Complaint on deposition testimony from Rynerson and LVI (through its legal counsel, Ericka Jackson) taken in a separate case, Walker v. The Lasik Vision Institute, LLC, No. CT-000475-16 (ECF Nos. 75-3, 75-5).  (See ECF No. 75 ¶ 86–136, 154, 170.)  Specifically, she alleges, "LVI billed patients for all medical services, collected all medical payments and then paid Rynerson a fee for each eye surgery." (Id. ¶ 96.) (citing Rynerson Deposition, ECF No. 75-3 at PageID 1044, 20:3–10.)  Plaintiff further alleges:

> 69. Defendants Rynerson and Rynerson PSC's charges for refractive surgery ranged from $1200 to $1700 per eye, depending on the procedure.

70. Plaintiffs and the class paid money to Defendants Rynerson and/or Rynerson PSC which was deposited into a bank account in the name of Rynerson PSC. However, Defendant LVI or Vision Holdings actually controlled the bank account in the name of Rynerson PSC and would sweep out all payments deposited into this account on a regular basis. Then Defendants LVI or Vis[i]on holdings would only pay Rynerson operating physicians between $85 to $150 per eye, with LVI [] keeping all of the remaining medical payments made by or on behalf of patients for it and Vision Holdings.

(Id. ¶ 69–70.)

The Management Services Agreement between Rynerson, Rynerson PSC, and LVI ("MSA") (see generally ECF No. 75-4) designates the sum that LVI was to retain as a "Management Fee."   (Id. at PageID 1085.)   Under the MSA, the Management Fee includes reimbursement for LVI's "out-of-pocket expenses" such as supplies, legal fees, and salaries of support staff; a "Facility Fee" for use of LVI's space; an "Equipment Fee" for use of LVI's equipment; and an "overhead fee." (Id. at PageID 1084–85, 1091.)  However, Plaintiff alleges:

Defendant Erica Jackson, Vision Holdings and LVI have all admitted under oath [in Walker v. LVI] that LVI never truly charged [such fees] . . . . [and] that these so-called fees did not represent fair market value for the services that LVI ostensibly provided to Tennessee physicians such as [] Rynerson . . . .

(Complaint, ECF No. 75 ¶ 72; see also id. ¶¶ 105, 107, 110, 113, 116.) (citations omitted.)

Plaintiff alleges that this was all part of a "scheme" that LVI and Vision Holding[s][1] "concocted . . . that attempted, albeit thinly, to disguise the fact that they were . . . dividing medical fees" "as opposed to charging a reasonable fee for their alleged management assistance that was not contingent on medical payments."  (Id. ¶ 63, 71.)  Specifically, she alleges that "LVI Super[,][2] [] Vision Holdings[,] and LVI[] would recruit ophthalmologists for their eye surgical centers so that medical fees for eye surgeries could be generated and then divided between LVI and these physicians."  (Id. ¶ 64.)  She alleges that Rynerson was recruited as a "figurehead" to enable LVI

---

[1] "Defendant LVI is a wholly owned subsidiary of Defendant [Vision Holdings]."  (Complaint, ECF No. 75 ¶ 9 n.1.)
[2] "Defendant LVI Super . . . [own]d, control[led] and operat[ed] [] Vision Holdings and LVI."  (Id. ¶ 62.)

to facially comply with Tennessee law prohibiting the corporate practice of medicine and entered into sham MSAs with LVI that falsely purported to give him ownership and management responsibilities over LVI's eye clinic locations (<u>Id.</u> ¶ 86–102.) (citations omitted.)  Plaintiff further alleges that these MSAs falsely purported to give Rynerson and Rynerson PSC access to a bank account where patient fees were collected and to charge the Rynerson Defendants for LVI's management responsibilities, but that, in reality, the payment structure functioned as described above.  (<u>Id.</u> ¶ 104–16.) (citations omitted.)  She alleges that Rynerson had full knowledge of this "sham" from the time he entered into the MSAs.  (<u>Id.</u> ¶ 104, 122–23, 129.) (citations omitted.) ("Rynerson knew that LVI would manage these accounts just to pay him a per fee price, which he viewed as 'how the game was to be played.'")

Plaintiff alleges that "[a]t no time did any Defendant or any other person or entity disclose to Plaintiff that LVI and/or Vision Holdings were dividing medical fees with Rynerson, Rynerson PSC or any other person." (<u>Id.</u> ¶ 153.)  She alleges that deposition testimony from <u>Walker</u> "conclusively establishes [that] LVI, Vision Holdings, Rynerson and Rynerson PSC never disclosed the division of these fees."  (<u>Id.</u> ¶ 154.) (citing Jackson Deposition, ECF No. 75-5 at PageID 1105–06, 45:22–46:1.)   Plaintiff alleges that "Defendant never requested Plaintiff's consent to the division of fees that they secretly engaged in with respect to the medical services provided by Defendant Rynerson. Plaintiff never consent[ed] to the division of such medical fees." (<u>Id.</u> ¶ 156.)

Plaintiff alleges that following her surgeries she "experienced significant pain in her eyes as well as clouded and blurred vision."  (<u>Id.</u> ¶ 157.)  She alleges that despite her several attempts to obtain a follow-up examination, she was "always" told that "no one was available to see her for follow-up care."  (<u>Id.</u> ¶ 157–58.)  She alleges that "the truth was that Defendant Rynerson had no

economic incentive to provide any follow-up care to Plaintiff because he would receive no further medical fees from LVI or Vision Holdings for her care." (Id. ¶ 158.)

### B. Procedural Background

This action was removed from the Chancery Court of Shelby County, Tennessee on June 8, 2020. (ECF No. 1.) Plaintiff filed her First Amended Class Action Complaint on July 20, 2020. (ECF No. 42.) The Rynerson Defendants filed a Motion to Dismiss under 12(b)(6) (ECF No. 43), which was mooted when the Court granted Plaintiff leave to amend her complaint. (ECF No. 72.) Plaintiff filed her Second Amended Class Action Complaint (the "Complaint") on September 11, 2020. (ECF No. 75.) In her Complaint, Plaintiff alleges seven counts: class action counts[3] for violation of anti-fee-splitting statute Tenn. Code Ann. § 63-6-225(a) & 63-6226(a), aiding and abetting violation of the statute, civil conspiracy to violate the statute, constructive trust as a remedy, corporate officer liability, and punitive damages as a remedy; as well as an individual count for violations of the TCPA, Tenn. Code Ann. § 47-18-104(a) & (b).[4] (Id. at Counts 1–7, PageID 1016–25.)

The Rynerson Defendants filed a Motion to Dismiss Plaintiff's Second Amended Class Action Complaint with Prejudice Pursuant to Rule 12(b)(6) on October 13, 2020. (ECF No. 85; see also Memorandum, ECF No. 85-1.) The LVI Defendants filed a Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6) on the same day. (ECF No. 86; see also Memorandum, ECF

---

[3] Plaintiff seeks to certify a Rule 23 class defined as:

> For the applicable statutes of limitations time period for each count in this Class Complaint, Plaintiff and all similarly situated persons who had any eye procedure performed at any LVI eye clinic operating in Tennessee and who has paid any compensation to any Defendant in this matter in connection with same. Excluded from the Class are the Judge assigned to this matter and any member of the Judge's staff and immediate family.

(Complaint, ECF No. 75 ¶ 159.)

[4] Plaintiff lodges several of her claims against Defendants LVI HoldCo, LLC, AG LVI Holdings, LLC ("Audax LVI"), Audax Management Company, LLC ("Audax Management"), 9597930 Canada, Inc. ("Canada, Inc."), and Michael C. Fondo. (See id. ¶¶ 174–203.) These five Defendants have since been dismissed from the case (ECF Nos. 77, 88), so the Court will not consider any claims against them.

No. 87.)   On October 27, 2020, Plaintiff filed a Response in Opposition to the Rynerson Defendants' Motion to Dismiss and a Response in Opposition to the LVI Defendants' Motion to Dismiss.  (ECF Nos. 89, 90, respectively.)  The LVI Defendants filed a Reply on November 6, 2020.  (ECF No. 93.)  The Rynerson Defendants filed a Reply on November 10, 2020.  (ECF No. 95.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cnty., 814 F.2d 277, 279 (6th Cir. 1987)).  A motion to dismiss only tests whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases which would waste judicial resources and result in unnecessary discovery.  Brown v. City of Memphis, 440 F. Supp. 2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  If a court decides that the claim is not plausible, the case may be dismissed at the pleading stage.  Iqbal, 556 U.S. at 679.  "[A] formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level."  Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555).  A claim is plausible on its face if "the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A complaint need not contain detailed factual allegations. Twombly, 550 U.S. at 570. A plaintiff without facts who is "armed with nothing more than conclusions," however, cannot "unlock the doors of discovery." Iqbal, 556 U.S. at 678-79; Green v. Mut. of Omaha Ins. Co., No. 10-2487, 2011 WL 112735, at *3 (W.D. Tenn. Jan. 13, 2011), aff'd, 481 F. App'x 252 (6th Cir. 2012). A court "need not accept as true legal conclusions or unwarranted factual inferences." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679. A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

## III.    ANALYSIS

Each of Plaintiffs' seven counts is discussed in turn below. In sum, Plaintiff has failed to state a claim under any of these counts. Defendants' Motions to Dismiss are thus **GRANTED** in full.

### A.    Plaintiff Has Not Sufficiently Alleged a Violation of Tenn. Code Ann. §§ 63-6-225(a) and 63-6-226(a).

Tenn. Code Ann. § 63-6-225 regulates the division of fees by licensed physicians. The statute makes it an

> offense for any licensed physician or surgeon to divide or to agree to divide any fee or compensation of any sort received or charged in the practice of medicine or surgery with any person without the knowledge and consent of the person paying the fee or compensation or against whom the fee may be charged.

Tenn. Code Ann. § 63-6-225(a). There are two "exceptions" to the fee-splitting prohibition in § 63-6-225. Cookeville Reg'l Med. Ctr. Auth. v. Cardiac Anesthesia Servs., PLLC, No. M2007-

8

02561-COA-R3-CV, 2009 WL 4113586, at *5 (Ct. App. Tenn. July 24, 2009).  The two exceptions are:

> First, subsection (a) provides that a physician may split the fee with another *if* there is consent by the patient or payor. . . . Second, under subsection (b) a fee may be split [with an independent contractor] to pay for goods or services *if* the amount is reasonably related to the value of those goods or services.

Id.  Violation of § 63-6-225(a) constitutes a misdemeanor.  Tenn. Code Ann. § 63-6-225(c).  Further, § 63-6-226 provides that "[a]ny person who violates § 63-6-225 shall also forfeit and pay treble the value of the fee or compensation to the person applying the same or against whom the fee may be charged, or from whom it may have been demanded."  Id. § 63-6-226(a).  The statute affords "the party entitled to sue" a statute of limitations of "two (2) years after the fee or compensation has been paid or demanded."  Id.  After that time, the cause of action passes to "the state."  Id.

Plaintiff alleges in her Complaint that Defendants LVI Super, LVI, and Vision Holdings "were clearly dividing medical fees with Rynerson and/or Rynerson PSC" in violation of §§ 63-6-225(a) and 63-6-226(a) and that thus "Plaintiffs and the Class Members are entitled to recover from these Defendants treble the amount of all payments made to Defendants for the last two (2) years preceding the filing of this Class Complaint."  (ECF No. 75 ¶¶ 169, 173.)  The Rynerson Defendants and the LVI Defendants each argue that Plaintiff has failed to state a claim for illegal fee splitting under the Tennessee fee-splitting statute.  (ECF No. 85-1 at PageID 1198; ECF. No 87 at PageID 1240.)  Both groups of Defendants assert that Plaintiff's claim fails because "she had knowledge of and consented to the payments of fees to LVI," thereby meeting the exception contained in § 63-6-225(a).  (ECF. No 85-1 at PageID 1203; ECF No. 87 at PageID 1241–42.)  The LVI Defendants advance two additional arguments: (1) that the financial arrangement between Dr. Rynerson and LVI met the exception in § 63-6-225(b) even if Williams did not consent to it;

and (2) that even if Plaintiff has stated a claim "as against Dr. Rynerson, the case cannot proceed against any of the remaining Defendants" because the "fee-splitting statute only applies to physicians . . . and does not allow recovery against any entities or other individuals." (ECF No. 87 at PageID 1242–43.)

  i.  Section 63-6-225(a) Exception ("Knowledge and Consent")

Both groups of Defendants rely entirely on <u>Chatman v. Radiological Services, Inc.</u>, No. 89-119-II, 1989 WL 119389 (Tenn. Ct. App. Oct. 11, 1989) to argue that Plaintiff consented to Defendants' fee-splitting arrangement. (ECF No. 85-1 at 1198–1203; ECF No. 87 at PageID 1241–42.) In that case, where the plaintiff received and paid a billing statement from the defendant corporation for $40 following medical treatment by its doctor employee, the court affirmed the trial court's finding that "plaintiff's payment to [the corporation] for the [doctor's] services . . . was a[] [judicial] admission that he had knowledge that some one other than [the doctor] was receiving the fee, and that he consented thereto."[5] <u>Chatman</u>, 1989 WL 119389, at *4. Thus, the court concluded, "there [was] no ground for any recovery under [the fee-splitting statute." <u>Id.</u> Defendants assert that Plaintiff's allegations in her Complaint, three extrinsic documents, and statements in her prior complaints constitute admissions of knowledge and consent and align this case squarely with <u>Chatman</u>. (ECF No. 85-1 at PageID 1201–03; ECF No. 87 at PageID 1241–42; ECF No. 93 at PageID 1370; ECF No. 95 at PageID 1399–1402.)

Plaintiff challenges <u>Chatman</u>'s authority and its conclusion as to plaintiff Chatman's consent. She states:

> With no analysis, the court [] summarily affirmed the [trial] court's finding the plaintiff's allegation that he had paid RSI (as opposed to Dr. Williams) constituted a judicial admission as to his knowledge and consent to fee sharing. . . . Notably, the *Chatman* court

---

[5] The fee-splitting statute addressed in <u>Chatman</u> was an earlier version of the current statute, but the changes are not relevant to the "knowledge and consent" provision nor to the Court's discussion. <u>See</u> <u>Chatman</u>, 1989 WL 119389, at *3.

failed to examine whether such an allegation could qualify as a "judicial admission" under Tennessee law and simply assumed that it did.

(ECF No. 89 at PageID 1271.) (citation omitted.)

Tennessee state courts and federal courts in this Circuit have explained that judicial admissions of a fact must be "deliberate" and "unequivocal" statements of such fact. See Dean v. Weakley Cty. Bd. of Educ., No. W2007-00159-COA-R3-CV, 2008 WL 948882, at *15 n.15 (Tenn. Ct. App. April 9, 2008) ("A judicial admission is . . . a deliberate, clear, unequivocal statement of a party about a concrete fact within that party's knowledge.") (citations omitted); Kay v. Minacs Group (USA), Inc., 580 F. App'x 327, 331 (6th Cir. 2014) ("[A] statement must be 'deliberate, clear and unambiguous' and '"expressly concede . . . an alleged fact"' in order to be treated as a judicial admission.") (citations omitted).  Further, to be a judicial admission, a statement "must be [an] intentional waiver[] of a party's right to present evidence on a given issue." Pucci v. Nineteenth Dist. Court, 596 F. App'x 460, 467 (6th Cir. 2015) (citing MacDonald v. Gen. Motors Corp., 110 F.3d 337, 340 (6th Cir. 1997)). "Because of their binding consequences, judicial admissions generally arise only from deliberate voluntarily [*sic*] waivers that expressly concede . . . an alleged fact."  MacDonald, 110 F.3d at 440 (quoting United States v. Belculfine, 527 F.2d 941, 944 (1st Cir. 1975)).

Additionally, Plaintiff notes that Chatman is a "slip opinion decided . . . well before the Tennessee Attorney General's 1995 Opinion was issued."[6]  (ECF No. 89 at PageID 1270.)  The Rynerson Defendants reply that the Attorney General's Opinion is not binding and is factually

---

[6] Plaintiff in her Complaint cites to a 1995 Opinion in which the Tennessee Attorney General, in "explaining the purpose and rationale underlying Tenn. Code Ann. § 63-6-225," stated that the "'Legislature's use of the language ". . . without the knowledge and consent of the person paying the fee . . ."' . . . indicates its concern that patients have full knowledge regarding any financial considerations which may influence the physician's treatment recommendation.'"  (ECF No. 75 at ¶ 47.) (citing Opinion No. 95-030, 1995 Tenn. AG Lexis 32, at *5 (April 5, 1995).)

distinct from this case. (ECF No. 95 at PageID 1404 n.2.)  The Court agrees with Defendants. Opinions of the Attorney General are "'not binding on courts'" yet "'entitled to considerable deference.'" Scott v. Ashland Healthcare Center, Inc., 49 S.W.3d 281, 287 (Tenn. 2001) (citation omitted).  However, the 1995 Opinion addresses whether the anti-fee-splitting prohibition in § 63-6-225(a) extends beyond the patient-referral context and concludes that the statute's language and legislative history direct that it does.  Opinion No. 95-030, 1995 Tenn. AG Lexis 32, at *3–8 (April 5, 1995).  The Opinion does not express any opinion on whether a "judicial admission" of the type in Chatman may constitute knowledge and consent under the statute.

Like the Attorney General's Opinion, Chatman is persuasive authority.  See Tenn. R. S. Ct. Rule 4(G)(1).  The Court finds that because the Opinion does not directly contradict Chatman, nor directly address the situation presented in Chatman, therefore, Chatman remains authoritative. Additionally, while the cases defining the nature of a judicial admission (such as Dean, Kay, Pucci, and MacDonald) cause the Court to view Chatman with a critical eye, they do not specifically address § 63-6-225(a).  Indeed, of the scant case law on the statute itself, Chatman is the only case that addresses how a party may demonstrate knowledge and consent.  The other cases to address the provision assess only whether a contract between a physician (or physician group) and a management services company facially contained an unlawful fee-splitting provision where one party to the contract sought to prevent its enforcement.  See Plastic Surgery Associates of Kingsport Inc. v. Pastrick, No. E2014-01203-COA-R3-CV, 2015 WL 2400411, at *10 (Tenn. Ct. App. May 19, 2015); Cookeville Reg'l Med. Ctr. Auth., 2009 WL 4113586, at *1.  In Cookeville, the court noted that "far from obtaining the proper consent from the patient, the parties to the Contract agreed . . . that their financial agreement was 'highly confidential.'"  2009 WL 4113586,

at *5.  However, the Court did not look beyond the face of the contract to determine whether any scenario involving a particular patient could remedy such lack of consent.  Id.

Although <u>Chatman</u> is susceptible to critique, the Court finds that <u>Chatman</u> is the only directly relevant authority available to it and declines to challenge its holding as to the knowledge and consent exception.  Confronted with directly applicable Tennessee Court of Appeals authority, it is incumbent on the Court to follow and apply that authority.  The Court discusses the allegations in Plaintiff's Complaint, the documents, and Plaintiff's prior pleadings in connection with <u>Chatman</u>, below.

### a.   *The Allegations on the Face of the Complaint Are Distinguishable from the Facts of* *<u>Chatman</u>* *and Do Not Admit Knowledge and Consent to Fee Splitting*

First, the Rynerson Defendants assert that statements within Plaintiff's Complaint belie her knowledge and consent under <u>Chatman</u>.  (ECF No. 85-1 at PageID 1202.)  (citing ECF No. 75 ¶¶ 96, 150.)  Specifically, the Rynerson Defendants state that Plaintiff "admits that 'Rynerson PSC never, in fact, received such payments and never billed patients for medical services. Instead, LVI billed patients for all medical services [and] collected all medical payments'" and also admits "that pursuant to the July 18, 2018 Invoice, '[t]he total medical charges to Plaintiff for Defendant Ryerson's medical services was $3,718 (less her $100 she previously paid to Defendant Rynerson PSC) for a net total of $3,618.'"  (Id.) (citing ECF No. 75 ¶¶ 96, 150.)

Plaintiff responds that <u>Chatman</u> is "inapplicable to this action" because she does not allege that she paid LVI and has not made a judicial admission that she consented to fee splitting (discussed below).  (ECF No. 89 at PageID 1270–76.)  Plaintiff states that instead she "alleges that she paid [a] $100 [deposit] to Rynerson by credit card . . . . [, that she] used CareCredit to pay [additional] charges [of $3,618] to Rynerson PSC. . . . [and] that all patients paid Rynerson PSC

or the ophthalmologist under whose name LVI was operating at the time." (Id. at PageID 1271–72.) (citing Complaint, ECF No. 75 ¶¶ 70, 147–52.) (see also ECF No. 90 at PageID 1292.)

The Court agrees with Plaintiff that the allegations on the face of her Complaint alone do not admit payment to LVI.  Plaintiff does state that "LVI billed patients for all medical services [and] collected all medical payments" and that the "total charges to Plaintiff for Defendant Rynerson's medical services was $3,718." (Complaint, ECF No. 75 ¶ 96, 150.)  She also states that "Plaintiff financed Rynerson's medical fees through a credit lender known as CareCredit. Plaintiff has timely made all payments due under this arrangement." (Id. ¶¶ 151.)  However, the Court finds that these statements do not necessarily admit Plaintiff knew she was making a payment to LVI.  In particular, the MSA between Rynerson, Rynerson PSC, and LVI makes LVI responsible for the "billing and collection of all charges" "on behalf of [Rynerson PSC]" but gives LVI the power to "bill and collect, in [Rynerson PSC]'s name and on [Rynerson PSC]'s behalf . . . ." (ECF No. 75-4 at PageID 1079.) (emphasis added.)  Thus, Plaintiff's allegations that LVI billed and collected for medical services and that she paid the amount charged do not necessarily indicate that Plaintiff made payment "to LVI" as under Chatman, since LVI ostensibly billed in Rynerson PSC's name.  The Court finds that Plaintiff's allegations do not necessarily show payment to LVI and thus Plaintiff has not admitted knowledge and consent based on the face of the Complaint alone.

### b.  *The Court Will Consider Two of the Three Extrinsic Documents*

Both groups of Defendants point to the Patient Consent Form, Invoice, and Sales Draft attached to the CareCredit Credit Agreement (each of which Defendants have attached as exhibits) (see ECF Nos. 85-2, 85-3, 85-4, 87-1, 87-2, 87-3) as conclusive evidence under Chatman that Plaintiff knew of and consented to fee splitting between Rynerson to LVI.  (ECF No. 85-1 at

PageID 1202–03; ECF No. 87 at PageID 1241–42.)  Defendants assert that the Court may consider these documents at the Motion to Dismiss phase because they are incorporated by reference into Plaintiff's Complaint.  (ECF No. 85-1 at PageID 1195 n.1, 1196 nn.2–3; ECF No. 87 at PageID 1236 n.4.)

Assessing the facial sufficiency of a complaint at the Motion to Dismiss phase ordinarily must be undertaken without resort to matters outside the pleadings.  Wysocki v. Int'l Bus. Mach. Corp., 607 F.3d 1102, 1104 (6th Cir. 2010).  A court, however, "may [also] consider . . . any exhibits attached [to the Complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  Bassett v. NCAA, 528 F.3d 426 (6th Cir. 2008); see also Gavitt v. Born, 835 F.3d 623, 640 (6th Cir. 2016).  Documents are "central to the claims" in the Complaint when the causes of action therein "relate[] to and arise[] from" the documents. Greenberg v. Life Ins. Co. of Virginia, 177 F.3d 507, 514 (6th Cir. 1999).  Additionally, The Sixth Circuit has held that a court may at times consider extrinsic materials even when they are not explicitly referenced in the complaint.  "While documents integral to the complaint may be relied upon, even if they are not attached or incorporated by reference, it must also be clear that there exist no material disputed issues of fact regarding the relevance of the document."  Ouwinga v. Benistar 419 Plan Servs., 694 F.3d 783, 797 (6th Cir. 2012).  "Put otherwise, if the authenticity, validity, or enforceability of a document is not in dispute, the court may consider it on a motion to dismiss; but a genuine dispute as to the legal sufficiency of said document requires the court to consider the issue under a motion for summary judgment standard."  United States ex rel. Antoon v. Cleveland Clinic Found., 978 F. Supp. 2d 880, 888 (S.D. Ohio 2013) (citing Mediacom Southeast LLC v. BellSouth Telecommunications, Inc., 672 F.3d 396, 400 (6th Cir. 2012).  The

Sixth Circuit's language suggests that even where a court is permitted to consider certain documents on a Motion to Dismiss, such consideration is not mandatory ("may consider"). Courts in other circuits have expressly stated as much. See Davis v. HSBC Bank, 691 F.3d 1152, 1159 (9th Cir. 2012) ("Our relevant case law has recognized consistently that the district court may, but is not required to incorporate documents by reference.") (internal citations omitted).

First, the LVI Defendants argue that the Court "can and should" consider the Consent Form because the issue of "whether Plaintiff[] consented to the fee arrangement is central to her claim, and because the Patient Consent Form is cited to extensively and relied upon in the exhibits to the Complaint [i.e., the deposition transcripts]." (ECF No. 87 at PageID 1236 n.4.) Similarly, the Rynerson Defendants assert that the Court may consider the Consent Form because it was referenced to as an exhibit in the deposition itself and was, according to the deposition testimony, a standard form "'used for all patients at the Germantown facility.'" (ECF No. 85-1 at PageID 1195 n.1.) (internal citation omitted.) Plaintiff responds that the Court cannot consider the Consent Form because: (1) "nothing in the body [of] Plaintiff's Complaint makes any allegation or even an allusion to any medical Consent Form," (2) "the Consent Form referenced in Dr. Rynerson's deposition is not Plaintiff's Consent form but that of another patient, Chris Walker," and (3) Mr. Walker's Consent Form is not attached to [the] deposition." (ECF No. 89 at PageID 1273 n.3; ECF No. 89 at PageID 1293 n.3.) Plaintiff is correct that she never references a Consent Form in the body of her Complaint (see generally, ECF No. 75), and the Court is persuaded that references to an allegedly standard form belonging to another patient in an exhibit to the Complaint do not allow the Court to fairly consider Defendants' Consent Form exhibit under Bassett. Additionally, under Ouwinga and Antoon/Mediacom, Plaintiff disputes the validity and relevance of the Consent Form. In particular, she refers to Defendants' proffered exhibit as "the Consent Form allegedly

signed by Plaintiff." (ECF No. 89 at PageID 1273 n.3; ECF No. 90 at PageID 1293 n.3.) Accordingly, the Court declines to consider the Consent Form in deciding Defendants' Motions to Dismiss.

Next, both groups of Defendants either assert or suggest that the Invoice and Credit Agreement / Sales Draft may be considered because they are referenced in and central to Plaintiff's Complaint. (ECF No. 85-1 at PageID 1196 nn.2–3; ECF No. 87 at PageID 1236.) Plaintiff responds that the Court cannot consider these documents because Plaintiff never alleges that she "was ever furnished . . . with the 'bill' bearing LVI's name [and] address" and mentions only that she "paid for Dr. Rynerson's services via . . . CareCredit" but "makes no reference to any credit agreement between her and CareCredit." (ECF No. 89 at PageID 1273; ECF No. 90 at PageID 1293.) Plaintiff is correct that she never mentions the Invoice or the Credit Agreement in her Complaint (see generally, ECF No. 75). In her Complaint, Plaintiff asserts only that "LVI billed patients for all medical services . . . ." (Id. ¶ 96) and that "Plaintiff financed Rynerson's medical fees through a credit lender known as CareCredit. Plaintiff has timely made all payments due under this arrangement." (Id. ¶ 151.) However, Defendants also assert that "Plaintiff clearly relied on [the documents] in crafting her allegations." (ECF No. 95 at PageID 1399.)

Courts in this Circuit have elected to consider documents that were central to Plaintiff's claims and fairly implicated by the allegations in the Complaint although not explicitly referenced therein. In one case, the Sixth Circuit held:

> Plaintiff references the [group health] 'plan' numerous times in his complaint. Although plaintiff maintains that the complaint referred only to the 'plan' as an entity and not to the 'plan documents,' his claims are based on rights under the plans which are controlled by the plans' provisions as described in the plan documents. Thus, we will consider the plan documents along with the complaint, because they were incorporated through reference to the plaintiff's rights under the plans, and they are central to plaintiff's claims.

Weiner v. Klais and Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997) overruled on other grounds by

Swierkiwica v. Sorema N.A., 534 U.S. 506 (2002).   See also Lewis Lumber & Milling, Inc. v.

Mereen-Johnson, LLC, No. 3:17-cv-00643, 2018 WL 6181356, at *2 (M.D. Tenn. Nov. 27,

2018) (citing Weiner, 108 F.3d at 89) ("[W]here a plaintiff does not refer directly to documents

in the pleadings, if those documents govern the plaintiff's rights and are necessarily incorporated

by reference, then the motion need not be converted to one for summary judgment.").   In a

second case, the court held it could consider documents relating to a hearing where "[p]laintiff

allege[d] that he received insufficient process" but did not reference the documents themselves.

Anderson v. Ohio State Univ., No. C-2-00-123, 2001 WL 99858, at *2 (S.D. Ohio Jan. 22,

2001), aff'd, 26 F. App'x 412 (6th Cir. 2001).   See also Arrowood Indem. Co. v. Lubrizol Corp.,

No. 1:10 CV 2871, 2011 WL 3490268, at *4 (N.D. Ohio Aug. 10, 2011) (citing Weiner, 108

F.3d at 89) (holding that the complaint referred to prior litigation including the "admissions and

rulings of that case" and thus "incorporate[d] those documents into the pleadings") ("In fact, the

Sixth Circuit has repeatedly held that such attachments are appropriately included in a motion to

dismiss even when the initial claim never actually identifies the specific document.").

        The Court finds that the Invoice and Credit Agreement / Sales Draft are central to

Plaintiffs claims and determinative of her rights.   In particular, the documents are centrally

related to Plaintiff's claim that Defendants split her medical fees without her consent because

they indicate how and to whom Plaintiff was to pay those fees. Moreover, the documents are,

although not explicitly referenced, fairly implicated on the face of Plaintiff's allegations.

Plaintiff alleges, "LVI billed patients for all medical services . . ." and later alleges, "The total

medical charges to Plaintiff for Defendant Rynerson's medical services was $3,718 (less her

$100 she previously paid to Defendant Rynerson PSC) for a net total of $3,618."  (Complaint,

ECF No 75 ¶ 150.)  Plaintiff's references to "bill[ing]" and "charges" align with, rely on, and fairly implicate the Invoice.  Plaintiff additionally alleges, "Plaintiff financed Rynerson's medical fees through a credit lender known as CareCredit. Plaintiff has timely made all payments due under this arrangement."  (Id. ¶ 151.)  Plaintiff's reference to a financing "arrangement" with CareCredit fairly implicates the Credit Agreement / Sales Draft.

Unlike with the Consent Form, Plaintiff alleges no factual dispute as to the Invoice or Credit Agreement / Sales Draft.  Plaintiff does not dispute "the factual contents" of these documents.  See Mediacom, 672 F.3d at 400.  While Plaintiff asserts that she never alleges receiving the Invoice nor mentions the Credit Agreement (see ECF No. 89 at PageID 1273; ECF No. 90 at PageID 1293), she also never alleges that she did not receive (or sign) these documents.  In other words, their "authenticity, validity, or enforceability . . . is not in dispute." United States ex rel. Antoon, 978 F. Supp. 2d at 888 (citing Mediacom, 672 F.3d at 400). Plaintiff asserts, however, that the Court is nevertheless prohibited from considering the documents because Defendants have offered them to challenge and directly contradict Plaintiff's allegations, which the law does not permit."  (ECF No. 89 at PageID 1275; ECF No. 90 at PageID 1293.)

"A court may not . . . consider materials outside the pleading that 'rebut, challenge, or contradict anything in the plaintiffs' complaint' without converting the motion to a Rule 56 motion for summary judgment." Cain v. Redbox Automated Retail, LLC, 981 F. Supp. 2d 674, 686 (E.D. Mich. 2013) (quoting Song v. City of Elyria, Ohio, 985 F.2d 840, 842 (6th Cir. 1993)).  In Cain, a case brought under Michigan's Video Rental Privacy Act, Defendants tried to introduce their Terms of Use to prove Plaintiffs had given permission to share Plaintiffs' information. Id. at 686. The court held that the Terms of Use could not be considered because they "improperly

contradict[ed] Plaintiff's assertions that they *did not* agree to the Terms." Id. at 687. By contrast, in Song, where Plaintiffs alleged a city ordinance violated constitutional provisions, the Court held it could consider a prior judgment ruling the city ordinance to be constitutional because it "only clarified [] the issue before the court . . . . [and] did not rebut, challenge, or contradict anything in the plaintiffs' complaint." 985 F.2d at 842.

The Rynerson Defendants assert that the documents are properly before the Court because they "clarify the allegations . . . [and do] not refute them." (ECF No. 95 at PageID 1399.) The Court agrees with Defendants. Indeed, the Invoice and Credit Agreement confirm charges and a financing arrangement that Plaintiff herself alleges in her Complaint. Unlike in Cain, Plaintiff does not allege that she did not receive or endorse these documents. Additionally, the Invoice clarifies Plaintiff's allegation that LVI billed all patients: Plaintiff received a bill that, on its face, was from LVI. Plaintiff appears to allege that the documents "directly contradict [her] allegations" that (1) she "reasonably believed that whatever funds that CareCredit would advance on her behalf . . . would be tendered to [] Rynerson PSC" and (2) "at no time did any Defendant or any other person or entity disclose [the fee splitting] to Plaintiff." (ECF No. 89 at PageID 1274–75.) Instead Defendants "admitted under oath that they never made any fee division disclosure to any Tennessee LVI patient." (Id. at PageID 1275) (citations omitted.) The documents, however, do not challenge or contradict factual matter within Plaintiff's allegations; instead, they merely reframe Plaintiff's contentions as to her lack of knowledge and consent regarding the fee splitting as legal conclusions. Plaintiff's alleged lack of knowledge and consent must be evaluated in light of Chatman (as discussed below).

Thus, because they are central to Plaintiff's claims, are clearly relied on and alluded to in her allegations, are not the subject of a factual dispute, and do not challenge or contradict Plaintiff's

factual allegations, the Court may and does consider the Invoice and the Credit Agreement / Sales Draft when deciding Defendants' Motions to Dismiss.

### c. *The Court Will Not Consider Plaintiff's Prior Complaints*

Finally, Defendants claim that Plaintiff's initial and first amended complaints explicitly refer to the documents and allege payment to LVI.  (ECF No. 93 at PageID 1370; ECF No. 95 at PageID 1399–1400.) (citations omitted.)  Defendants assert that the Court can and should consider these prior pleadings, including the documents referenced within, as "judicial . . . 'admissions against'" Plaintiff and "subject to judicial notice."  (ECF No. 95 at PageID 1400–01 (citing Svete v. Wunderlich, No. 2:07-CV-156, 2008 WL 4425509, at *4 (S.D. Ohio Sept. 30, 2008)). See also ECF No. 93 at PageID 1370 (citing Svete, 2008 WL 4425509, at *15–17.))  As the Court discussed earlier in this litigation, "'[i]t is well-settled that an amended complaint supersedes the original complaint and renders the initial pleading a nullity.'"  (ECF No. 72 at PageID 965.) (ruling that the Rynerson Defendants' Motions to Dismiss Plaintiff's First Amended Class Action Complaint had been mooted by her forthcoming Complaint.) (quoting Carbon Processing and Reclamation, LLC v. Valero Marketing and Supply Co., No. 09-2127-STA-cgc, 2009 WL 2369298, at *3 (W.D. Tenn. Apr. 20, 2013.))  "'[G]enerally, amended pleadings supersede original pleadings.'"  Garrett v. Mays, 777 F. App'x 816, 817 (6th Cir. 2019) (citations omitted).  However, even where prior pleadings have been superseded or withdrawn in the litigation, "the Sixth Circuit has held that 'pleadings withdrawn or superseded by amended pleadings are admissions against the pleader in the action in which they were filed.'"  PetroJebla, SA de C.V. v. Betron Enterprises, Inc., No. 19-11439, 2020 WL 95802, at *4 (E.D. Mich. Jan. 8, 2020) (quoting Pennsylvania Railroad Company v. City of Girard, 210 F.2d 437, 440 (6th Cir. 1954)).  Nevertheless, the Court finds it unnecessary to consider Plaintiff's prior complaints to consider the documents at issue and finds that the

documents in conjunction with Plaintiff's current allegations are sufficient to find an admission of knowledge and consent under <u>Chatman</u>.

### d. *Plaintiff Had Knowledge and Consent to Fee-Splitting under <u>Chatman</u>*

Plaintiff asserts that even if the Court may properly consider the documents, "an examination of them in no way demonstrates that Plaintiff has made some sort of judicial admission that the Defendants disclosed the nature of their fee sharing arrangement to her and that she consented to same." (ECF No. 89 at PageID 1276; ECF No. 90 at PageID 1294.) She asserts that the Invoice and Credit Agreement "contain[] no disclosure as to the Defendants confidential fee sharing arrangement." (ECF No. 89 at 1279.) The bill "contains no language even directing Plaintiff as [*sic*] the party that should be paid," while the Credit Agreement "fails to state who CareCredit is paying on the patient's behalf." (<u>Id.</u>) The Rynerson Defendants reply that Plaintiff "overlook[s] the analysis of <u>Chatman</u>," because under <u>Chatman</u>, the extrinsic documents show that Plaintiff "'had knowledge that someone other than Dr. [Rynerson] was receiving the fee, and that [s]he consented thereto.'" (ECF No. 95 at PageID 1403–04.)

The Court agrees with Defendants. As discussed above, the Court credits <u>Chatman</u>'s conclusion that "plaintiff's payment to [the corporation] for the services of [the doctor] was an admission that he had knowledge that some one other than [the doctor] was receiving the fee, and that he consented thereto" thus providing "no ground for recovery under [the fee-splitting statute]." 1989 WL 119389, at *4. The Court finds that, considered in conjunction with Plaintiff's allegations, the Invoice and Credit Agreement / Sales Draft equate to conclusive proof of Plaintiff's payment to LVI. Specifically, based on the Invoice bearing LVI's name and address at the top (ECF No. 85-3 at PageID 1220); the Sales Draft attached to the Credit Agreement that also lists LVI as the payee (ECF No. 85-4 at PageID 1223); and Plaintiff's allegations in her Complaint that

she had timely made payments of the "charges" matching those on the Invoice under her "arrangement" with CareCredit (ECF No. 75 ¶ 150–51), the Court is forced to conclude that Plaintiff has admitted payment to LVI and has thus admitted knowledge and consent to fee splitting under <u>Chatman</u>.

Plaintiff attempts to distinguish <u>Chatman</u> because that case was decided on summary judgment and the court found that the plaintiff had failed to sue the correct party and that no fee splitting had occurred. (ECF No. 89 at PageID 1270–71.) However, <u>Chatman</u> is clear that payment to the third party constitutes knowledge and consent to fee splitting. There is no material difference between the facts that led the <u>Chatman</u> court to conclude that Chatman met the knowledge and consent exception and Plaintiff's payment to LVI in this case.

The Court thus concludes that, following <u>Chatman</u>, Plaintiff's indisputable payment to LVI, as proven by the Invoice and Credit Agreement in conjunction with her allegations, establishes her knowledge and consent to Defendants' fee splitting and precludes her from recovery under the statute.

    ii.    <u>Section 63-6-225(b) Exception and Proper Defendant(s) for a Fee-Splitting Claim</u>

Plaintiff's fee-splitting claim need only meet one of the two statutory exceptions to fail. Because the Court finds that Plaintiff has failed to state a claim due to the "knowledge and consent" exception, the Court finds it unnecessary to address the LVI Defendants' additional arguments that the financial arrangement between Dr. Rynerson and LVI met the exception in § 63-6-225(b) and that even if Plaintiff has stated a claim "as against Dr. Rynerson, the case cannot proceed against any of the remaining Defendants." (ECF No. 87 at PageID 1242–43.)

As Plaintiff has failed to state a claim for a violation of § 63-6-225(a) or 63-6-226(a), the Rynerson Defendants' and the LVI Defendants' Motions to Dismiss are **GRANTED** with respect to Count 1 of Plaintiff's Complaint.

> B. *Plaintiff Has Not Sufficiently Alleged Aiding and Abetting a Violation of Tenn. Code Ann. § 63-6-225(a) and § 63-6-226(a).*

Plaintiff's second count is against Defendants LVI Super, the Canada, Inc. Control Person Defendants, and the Vision Group Officer Defendants only.[7]  (ECF No. 75 at PageID 1018.)  The LVI Defendants claim that Count 2 should be dismissed because: (1) the underlying violation alleged in Count 1 fails, meaning there is no basis for a derivative aiding and abetting claim; (2) "aiding and abetting" a violation of the fee-splitting statute is not a cause of action that Tennessee recognizes, and (3) Plaintiff does not allege facts sufficient to find that Defendants aided and abetted such violation if it occurred.  (ECF No. 87 at PageID 1243–46.)  Plaintiff does not dispute that aiding and abetting is a derivative claim that depends on an actionable underlying cause of action.  (See ECF No. 90 at PageID 1306.)

In Tennessee, civil liability for aiding and abetting arises when "'the defendant knew that his companions' conduct constituted a breach of duty, and . . . gave substantial assistance or encouragement to them in their acts.'"  PNC Multifamily Capital Institutional Fund XXVI Ltd. Partnership v. Bluff City Cmty. Dev. Corp., 387 S.W.3d 525, 552 (Tenn. Ct. App. 2012) (quoting Carr v. United Parcel Serv., 955 S.W.2d 832, 836 (Tenn. 1997), overruled on other grounds by Parker v. Warren Cty. Utility Dist., 2 S.W.3d 170 (Tenn. 1999) (further citation omitted)). Tennessee's formulation of civil aiding and abetting liability relies on the Restatement of Torts,

---

[7] Plaintiff alleges that Vision Group is also liable for the aiding and abetting violation but notes that an automatic stay is in place as to that Defendant.  (ECF No. 75 ¶ 173 n.5, 176.)  Audax LVI, Audax Management, Michael C. Fondo, and Canada, Inc. are also named in this count but have since been dismissed from the case.  (ECF No. 75 at PageID 1018; ECF Nos. 77, 88.)

which creates liability for "harm resulting to a third person from the tortious conduct of another" under certain circumstances.  Id. (quoting Restatement of Torts § 876 (1934 & 2004 Supp.)). "[A]iding and abetting focuses on whether a defendant knowingly gave 'substantial assistance' to someone who performed wrongful conduct."  Caboodles Cosmetics, Ltd. Partnership v. Caboodles, LLC, 412 F. Supp. 2d 872, 880–81 (W.D. Tenn. 2006) (quoting State v. Ridenhour, 248 Kan. 919, 937 (Kan. 1991)).  Thus, where there is no underlying wrongful act, there can be no liability for aiding and abetting.  See id. at 881.

Because the Court found above that Plaintiff has failed to state a claim for a violation of the fee-splitting statute, the same holds true for Plaintiff's derivative aiding and abetting claim. The Court thus need not consider Defendants' other two arguments, that Tennessee recognizes no cause of action for aiding and abetting a violation of Tenn. Code Ann. § 63-6-225(a) or 63-6-226(a) and that Plaintiff has not alleged facts sufficient to show aiding and abetting.  (See ECF No. 87 at PageID 1243.)  The LVI Defendants' Motion to Dismiss is therefore **GRANTED** with respect to Count 2 of Plaintiff's Complaint.

### C.  Plaintiff Has Not Sufficiently Alleged a Civil Conspiracy to Violate Tenn. Code Ann. § 63-6-225(a) & § 63-6-226(a).

Plaintiff's third count is against Defendants LVI Super, the Canada, Inc. Control Person Defendants, the Vision Group Officer Defendants, Rynerson and Rynerson PSC.[8]  As with Plaintiff's aiding and abetting claim, Defendants likewise argue that her "claim for civil conspiracy fails, because Plaintiff[] [has] failed to sufficiently allege claims related to fee-splitting in Count 1."  (ECF No. 87 at PageID 1247.)  (See also ECF No. 85-1 at PageID 1204–05) ("Because there

---

[8] Plaintiff's conspiracy claim is also against Defendants Audax Management, Audax LVI, and Canada, Inc., but as mentioned in nn.4,7, supra, these Defendants have been dismissed from the case.

is no viable underlying claim to support her conspiracy claim, Plaintiff cannot state a viable conspiracy claim either.”))

Tennessee law defines an actionable civil conspiracy as “a combination of two or more persons who, each having the intent and knowledge of the other’s intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff.” Lane v. Becker, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010) (quoting Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 703 (Tenn. 2002)).  The elements required for liability are: “‘(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury.’” Pagliara v. Moses, 605 S.W.3d 619, 627 (Tenn. Ct. App. 2020) (citation omitted).  Furthermore, “[s]ince liability for civil conspiracy depends on the performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort.” Watson’s Carpet and Floor Coverings, Inc. v. McCormick, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007) (quoting Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983)).  “‘[T]here is no liability under a theory of civil conspiracy unless there is underlying wrongful conduct.’” Pagliara, 605 S.W.3d at 627 (quoting Levy v. Franks, 159 S.W.3d 66, 82 (Tenn. Ct. App. 2004)).  Thus, if the “claims underlying the allegations for civil conspiracy fail, the conspiracy claim must also fail.” Lane, 334 S.W.3d at 764 (citations omitted).  The Court finds that, because Plaintiff’s underlying claim for violation of the fee-splitting statute cannot proceed, her derivative claim for conspiracy must likewise fall.

Plaintiff responds that she alleges “in great detail” the conspiratorial “scheme that [Defendants] perpetrated to engage in unlawful fee splitting.”  (ECF No. 89 at PageID 1280.)

(citing Complaint, ECF No. 75 ¶¶ 86–136, 146–58.)   Plaintiff's allegations that Defendants intended to confidentially split fees, however, cannot overcome the fact that Defendants' actions did not violate the fee-splitting statute because Plaintiff had knowledge and consent as a matter of law.   Plaintiff simply cannot maintain a claim for conspiracy in the absence of any unlawful behavior on Defendants' behalf.   The Court finds, therefore, that Plaintiff has failed to state a claim for conspiracy to violate the fee splitting statute, and Defendants' Motions to Dismiss are **GRANTED** with respect to Count 3 of Plaintiff's Complaint.

### D. Plaintiff Has Not Sufficiently Alleged That She Is Entitled to a Constructive Trust as a Remedy

Plaintiff asserts Count 4 of her Complaint against "any Defendants receiving a monetary benefit from the wrongful acts alleged herein."   (ECF No. 75 at PageID 1021.)   Both groups of Defendants assert that Plaintiff is not entitled to a constructive trust as a remedy because her underlying claims for violation of the fee-splitting statute are without merit.   (ECF No. 85-1 at PageID 1209; ECF No 87 at 1248.)   The Rynerson Defendants additionally assert that even were her complaint to adequately allege an underlying fee-splitting violation, she has "fail[ed] to allege sufficient facts to establish a constructive trust."   (ECF No. 85-1 at PageID 1209 n.8.)   Because Plaintiff's claim may be disposed of on Defendants' first argument, the Court does not address the Rynerson Defendant's additional argument.

> A trial court can impose a constructive trust "against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy."

Coleman v. Olson, 551 S.W.3d 686, 695 (Tenn. 2018) (citation omitted).   "Under Tennessee law, a constructive trust is a remedy, not an independent cause of action."   Boynton v. Headwaters, Inc., No 1:02-cv-011110-JPM-egb, 2011 WL 13076900, at *3 (W.D. Tenn. Apr. 11, 2011)

("Because the deceased shareholders cannot prevail on their underlying claims, they . . . cannot share in the remedy of a constructive trust.") (citations omitted). See also Rider ex rel. Rider v. Rider, No. M2002-00556-COA-R3-CV, 2003 WL 22345475, at *3 (Tenn. Ct. App. Oct. 15, 2003) ("A constructive trust is merely a remedy used by courts to enforce substantive rights; it is not itself a substantive right.") (citation omitted).

Plaintiff asserts that as a result of their alleged violation of the fee-splitting statute, "Defendants have obtained millions of dollars of medical payments from Tennessee patients, *viz.* the Plaintiff and the Class Members, which, in equity and good conscience, they should not hold and enjoy." (ECF No. 75 ¶ 192.) Plaintiff, however, admits that "constructive trusts are remedies awarded in connection with viable causes of action" and asserts only that she has adequately pled the underlying violations. (ECF No. 89 at PageID 1282.) Because the Court has found that Plaintiff failed to allege a violation of Tenn. Code Ann. § 63-6-225(a) or 63-6-226(a), the Court finds that Plaintiff's claim for punitive damages cannot succeed. Thus, Defendants' Motions to Dismiss are **GRANTED** with respect to Count 4 of Plaintiff's Complaint.

### E. *Plaintiff Has Not Sufficiently Alleged Corporate Officer Liability*

Plaintiff asserts Count 5 of her Complaint against the Vision Group Officer Defendants and the Canada, Inc. Control Person Defendants only.[9] (ECF No. 75 at PageID 1022.) Defendants assert that Plaintiff's claim for corporate officer liability against the individual Defendants is "derivative of the [unsuccessful] substantive claims in Counts 1, 2, and 3" and thus "should also be dismissed." (ECF No. 87 at PageID 1248.) Plaintiff does not challenge the derivative nature of this claim but responds that because she did "sufficiently allege[] Counts 1, 2, and 3," Count 5 "survive[s]." (ECF No. 90 at PageID 1307.)

Corporate officers, charged in law with affirmative official responsibility in the

---

[9] Defendant Fondo is also named in this Count but has been dismissed from the case, as mentioned in nn.4, 7, supra.

> management and control of the corporate business, cannot avoid personal liability for wrongs committed by claiming they did not authorize and direct what was done in the regular course of that business, with their knowledge and with their consent or approval, or such acquiescence on their part as warrants inferring such consent or approval.[10]

3A Fletcher Cyc. Corp. § 1135.  Tennessee case law in this area is scant, yet the plain language of the treatise indicates that in order for a corporate officer to be held personally liable for corporate conduct, there must exist an underlying "wrong" or tortious conduct.  Id.  Courts in other jurisdictions have suggested as much.[11]  Further, Plaintiff's claims sound in derivative liability in their reliance on the underlying fee-splitting allegations.  Plaintiff alleges, for example, that the Vision Group Officer Defendants "knew of and participated in the unlawful [fee-splitting] scheme" and "were aware, or were reckless or negligent, in disregarding that Vision Holdings and LVI were [engaging in illegal fee-splitting]."  (ECF No. 75 ¶¶ 78, 80.)  As established above, Plaintiff has failed to sufficiently allege a violation of Tennessee's fee-splitting statute.  Thus, the Court finds that her derivative claim for corporate officer liability cannot stand.  The LVI Defendants' Motion to Dismiss is therefore **GRANTED** with respect to Count 5 of Plaintiff's Complaint.

*F.  Plaintiff Has Not Sufficiently Alleged That She is Entitled to Punitive Damages as a Remedy*

Count 6 of Plaintiff's Complaint is lodged against all Defendants.  (Id. at PageID 1022.) Both groups of Defendants assert that, as with Plaintiff's other derivative claims, her claim for punitive damages as a remedy cannot stand because she has failed to allege any requisite

---

[10] Neither party cites any source of legal authority for its claims. (See ECF No. 75 ¶¶ 195–98; ECF No. 87 at PageID 1248.)  However, Plaintiff draws from this passage nearly verbatim.  (See ECF No. 75 ¶ 196.)

[11] See, e.g., District of Columbia v. Student Aid Ctr., Inc., 2017 D.C. Super. LEXIS 18, at *10–11 (D.C. Super. Ct. Sept. 8, 2017) (citation omitted) (discussing corporate officer liability for "tortious acts" and "illegal actions" that occurred); Consol. Constr. Co. v. Metal Bldg. Components, L.P., 961 So. 2d 820, 824 (Ala. 2007) (quoting this treatise and discussing tort liability for corporate officers' actions); Bowling v. Ansted Chrysler-Plymouth-Dodge, Inc., 188 W.Va 468, 473 (W.V. Sup. Ct. App. 1992) (quoting this treatise and discussing the underlying "fraudulent scheme"); T.V. Spano Bldg. Corp. v. Wilson, 584 A.2d 523 (Del. Super. Ct. 1990) (quoting this treatise and noting that "corporate officers are liable for their tortious conduct even" when acting on behalf of the company) (emphasis added).

underlying violation. [12]  (ECF No. 85-1 at PageID 1210; ECF No. 87 at PageID 1248.)

"Plaintiffs cannot assert a punitive damages claim in Tennessee absent a viable, underlying cause." Toledo v. CSX Transportation, Inc., No. 3:16-CV-475-TAV-DCP, 2018 WL 4923361, at *7 (E.D. Tenn. Oct. 10, 2018) (citing Goodale v. Langenberg, 243 S.W.3d 575 585 (Tenn. Ct. App. 2007)). See also Williams v. New York Times Broadcasting Services, Inc., 1988 WL 27257, at *2 (Tenn. Ct. App. 1988 Mar. 23, 1988) ("Punitive damages, as all types of damages, are awarded as a result of some wrongful action by a defendant. Therefore, such awards are not causes of action in and of themselves; they instead arise out of the causes of action.").

Plaintiff does not dispute that a claim for punitive damages must rest upon an underlying substantive wrong. (ECF No. 89 at PageID 1282.) ("While it is undisputed that punitive damages . . . are remedies awarded in connection with viable causes of action, Plaintiff has demonstrated herein that she has adequately alleged her claims against the Rynerson Defendants.") (See also ECF No. 90 at PageID 1307.) Contrary to Plaintiff's assertion, she has not sufficiently alleged any underlying violation on which a claim for punitive damages could be based. Accordingly, Defendants' Motions to Dismiss are **GRANTED** with respect to Count 6 of Plaintiff's Complaint.

### G. Plaintiff's TCPA Claim Is Time-Barred and Insufficiently Pled

Plaintiff's seventh and final count is an individual claim alleged against Rynerson, Vision Holdings and LVI for violation of the Tennessee Consumer Protection Act ("TCPA"). (Complaint, ECF No. 75 at PageID 1024.) The Rynerson Defendants and the LVI Defendants advance essentially the same two arguments: (1) that Plaintiff's claim is time-barred under the statute and (2) that Plaintiff has failed to adequately allege the elements of a TCPA claim. (ECF No. 85-1 at

---

[12] The Rynerson Defendants additionally assert that even if Plaintiff has alleged a viable claim for unlawful fee splitting, punitive damages are "not recoverable" under the statute. (ECF No. 85-1 at PageID 1210.) Because Plaintiff's claim for punitive damages cannot survive based on Defendants' first argument (as discussed below), however, the Court will not address whether the fee-splitting statute contemplates the recovery of punitive damages.

PageID 1205–08; ECF No. 87 at PageID 1248–49.)  Additionally, the Rynerson Defendants seek "all damages from Plaintiff incurred in defending [her TCPA] claim, including their reasonable attorney's fees and costs pursuant to Tenn. Code Ann. § 47-18-109(e)(2)."  (ECF 85-1 at PageID 1208–09.) (citation omitted.)

> The TCPA creates an individual private cause of action for actual damages for
>
> [a]ny person who suffers an ascertainable loss of money or property, real, personal or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b) and declared to be unlawful by this part.

Tenn. Code Ann. § 47-18-109(a)(1).  Meanwhile, § 47-18-104(b)(5) makes it an unlawful to "[r]epresent[] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have."  Id. § 47-18-104(b)(5).  Section 47-18-110 provides for a limitations period for bringing claims under § 47-18-109: "within one (1) year from a person's discovery of the unlawful act or practice, but in no event . . . more than five (5) years after the date of the consumer transaction giving rise to the claim for relief."  Id. § 47-18-110.

Plaintiff alleges that she has a viable claim under § 47-18-109(a)(1) because "among other things, she has suffered an ascertainable loss of money" due to Defendants' violation of § 47-18-104(b)(5).  (ECF No. 75 ¶¶ 208–09.)  Specifically, she alleges that "Defendants represented that their services carried with [them] characteristics that were not true. [] Defendants failed to disclose to Plaintiff that LVI was dividing medical fees with licensed physicians. Had Defendants ma[d]e these disclosures, Plaintiff would not have used LVI and would have paid no sums to Defendants." (Id. ¶¶ 209–10.)

    i.    <u>Plaintiff's Claim Is Time-Barred</u>

Defendants claim that Plaintiff's TCPA action is time-barred because Plaintiff underwent her surgeries, was invoiced, and paid LVI via the Credit Agreement in July 2018 yet did not commence this action until April 30, 2020, more than one year after her "discovery of the [alleged] unlawful act or practice."[13]  (ECF No. 85-1 at PageID 1205; ECF No. 87 at PageID 1249.)

"In Tennessee, 'a cause of action [under the TCPA] accrues and the statute of limitations begins to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered.'" Power & Telephone Supply Co., Inc. v. SunTrust Banks, Inc., 447 F.3d 923, 930 (6th Cir. 2006) (quoting Potts v. Celotex Corp., 796 S.W.2d 678, 680 (Tenn. 1990)). See also Montesi v. Nationwide Mut. Ins. Co., 970 F. Supp. 2d 784, 789 (W.D. Tenn. 2013) ("Under the discovery rule, a TCPA cause of action accrues and the statute of limitations begins running 'when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant.'") (citations omitted).  The type of knowledge required to toll the limitations period "includes not only an awareness of the injury, but also the tortious origin or wrongful nature of that injury." Sherrill v. Souder, 325 S.W.3d 584, 594 (Tenn. 2010) (quoting Shadrick v. Coker, 963 S.W.2d 726, 734 (Tenn. 1998)).  However, "a plaintiff may not wait to file suit until after all of the injurious effects or the specific type of legal claim are known." Power & Telephone Supply Co., Inc., 447 F.3d at 930 (citing Shadrick, 963 S.W.2d at 734).

Plaintiff asserts that because "[t]he TCPA is to be 'liberally construed' in favor of the consumer," the limitations period is dictated by the discovery rule and thus began when she "knew or should have known" of the violation.  (ECF No. 89 at PageID 1281; ECF No. 90 at PageID

---

[13] The Rynerson Defendants additionally point to Plaintiff's execution of the Consent Form (ECF No. 85-1 at PageID 1205), but the Court will not consider the Consent Form in evaluating Defendants' Motion to Dismiss, as explained above.

1309.) (quoting <u>Proctor v. Chattanooga Orthopaedic Group, P.C.</u>, 270 S.W.3d 56, 60 (Tenn. Ct. App. 2008.))  She asserts that she did not know, nor should she have known, of the fee splitting when she underwent the procedures, as Defendants actively "concealed this information from her." (ECF No. 89 at PageID 1281–82; ECF No. 90 at PageID 1308–09.)  Defendants do not dispute that the discovery rule applies in this case but reply that Plaintiff could have with "reasonable care and diligence" discovered the fee-splitting arrangement when she signed the Consent Form or when she received the Invoice and Credit Agreement.  (ECF No. 95 at PageID 1405–06.)

Plaintiff alleges that "[t]he questions pertaining to [her] discovery of Defendants' unlawful act or practice are at best a question of fact to be determined on the merits at a later date."  (ECF No. 89 at PageID 1282; <u>see</u> <u>also</u> ECF No. 90 at PageID 1309.)  "[T]he time at which a plaintiff discovers or reasonably should discover a cause of action is typically a question of fact for the trier of fact to decide."  <u>Montesi</u>, 970 F. Supp. 2d at 789–90 (collecting cases).  "When undisputed evidence can lead to only one conclusion, however, accrual can be a question of law for the court to determine."  <u>Id.</u> at 790 (collecting cases).  <u>See</u> <u>also</u> <u>Cataldo v. United States Steel Corp.</u>, 676 F.3d 542, 547 (6th Cir. 2012) (citing <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007)) ("A motion under Rule 12(b)(6) . . . is generally an inappropriate vehicle for dismissing a claim based upon a statute of limitations. But [when] the allegations in the complaint affirmatively show that the claim is time-barred[,] . . . dismissing the claim under Rule 12(b)(6) is appropriate.").  As conclusively dictated by <u>Chatman</u>, Plaintiff's payment to LVI under the Invoice and Credit Agreement "put [her] on notice" (ECF No. 95 at PageID 1405) that LVI was sharing in fees from Plaintiff's medical procedures.  Although Plaintiff disputes the significance of <u>Chatman</u>, as discussed above, the Court has affirmed its import, and Plaintiff does not dispute the validity of the documents themselves.  The Court thus finds that Plaintiff's cause of action accrued upon her payment under the Invoice

and Credit Agreement as a matter of law.  Any "conceal[ment]" of the details of Rynerson and LVI's arrangement is beside the point.  Once on notice, Plaintiff, with reasonable care and diligence, should have discovered not just her injury (payment she allegedly would not have made had she been aware of Defendants' fee splitting) but also the allegedly "tortious origin" of such injury (the fee-splitting itself).

Plaintiff does not allege specific dates in conjunction with her allegations as to her medical charges and her "arrangement" with CareCredit, only that she underwent surgery with Rynerson in July 2018.  (See ECF No. 75 ¶¶ 150–51.)  However, as discussed above, these allegations fairly implicate the Invoice and the Credit Agreement, which are dated July 18, 2018 and July 21, 2018 respectively (see ECF Nos. 85-3, 85-4).  Further, Plaintiff also alleges that she "timely made all payments due under [the] arrangement" with CareCredit (ECF No. 75 ¶ 151), and the Credit Agreement directs payment of "monthly payments" within the 24-month promotional period. (ECF No. 85-4.)  Considering the dates on the face of these fairly incorporated documents as well as the allegations on the face of Plaintiff's Complaint itself, it would require contorted logic to divine a factual dispute as to whether Plaintiff paid any charges prior to April 30, 2019, i.e., outside the limitations period.[14]  Thus, although the precise date of Plaintiff's payment under the Invoice and Credit Agreement is not alleged, the Court finds that as a matter of law, any cause of action that she may have had under the TCPA is barred by the one year statute of limitations.

ii.     Plaintiff Has Not Stated a Claim Under the TCPA

Although the Court finds that Plaintiff's claim is time barred, the Court will address Defendants' contention that Plaintiff has failed to allege the elements of a TCPA claim (ECF No.

---

[14] Cf. Montesi, 970 F. Supp. 2d at 790 (declining to find claim time barred as a matter of law where it could not be determined "based on the face of the complaint" whether the violation was discovered sometime within a "theoretically" possible narrow date range that would not contravene the limitations period).

85-1 at PageID 1206–08; ECF No. 87 at PageID 1248–49), especially as it is relevant to the Rynerson Defendants' claim for fees and costs under the statute (see ECF No. 85-1 at PageID 1208–09.)  The Rynerson Defendants contend that Plaintiff's TCPA claim is insufficient because its only asserted basis, Defendants' alleged "fail[ure] to disclose to Plaintiff that LVI was dividing medical fees with licensed physicians," has already been discredited in the context of Plaintiff's fee-splitting claim.  (Id. at PageID 1207.) (citing Complaint, ECF No. 75 ¶ 209.)  Both groups of Defendants further assert that Plaintiff has failed to allege an "ascertainable loss of money or property" resulting from Defendants' conduct.  (Id. at PageID 1207–08; ECF No. 87 at PageID 1248–49.)

"In order to recover under the TCPA, the plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by [§ 47-18-104(b) of] the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, . . . or any other article, commodity, or thing of value . . . ."  Tucker v. Sierra Builders, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (citing Tenn. Code Ann. § 47-18-109(a)(1)) (emphasis added).

### a. *Plaintiff Has Not Adequately Alleged a § 47-18-104(b)(4) Violation*

Tennessee courts define a "'deceptive' act or practice [as] 'one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as [to] a matter of fact."  Audio Visual Artistry v. Tanzer, 403 S.W.3d 789, 810 (Tenn. Ct. App. 2012) (quoting Tucker, 180 S.W.3d at 116).  "An act or practice may be deemed unfair if it 'causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.'"  Id. (quoting Tucker, 180 S.W.3d at 116–17).  Regardless of whether an act or practice meets those definitions, however, an individual bringing a TCPA claim "can only sue for damages based on one of the

specific subsections of . . . § 47-18-104(b)."  Harding v. BMW of North Am., LLC, No. 3:20-cv-00061, 2020 WL 5039439, at *3 (M.D. Tenn. Aug. 26, 2020).  The statute provides that those enumerated acts or practices are "unfair or deceptive" and declares them "unlawful and in violation" of the Act.  See Tenn. Code Ann. § 47-18-104(b).  Section 104(b)(5) prohibits in relevant part "[r]epresenting that . . . services have . . . characteristics that they do not have . . . ."  Id. § 47-18-104(b)(5).

As mentioned, Plaintiff alleges that Defendants violated § 47-18-104(b)(5) because they misrepresented characteristics of their services in "fail[ing] to disclose to Plaintiff that LVI was dividing medical fees with licensed physicians."  (ECF No. 75 ¶ 209.)  The Rynerson Defendants assert that no deception occurred because Plaintiff "was clearly notified and consented to payment of fees to LVI" in the Consent Form, the Invoice, and the Credit Agreement / Sales Draft.  (ECF No. 85-1 at PageID 1207.)  Defendants suggest that Plaintiff has thus also failed to allege any misrepresentation under (b)(5).  (Id.)  Plaintiff reiterates in response that Defendants' "massive scheme" was "never disclosed" to her and that she has alleged "numerous and long-standing fraudulent and deceptive acts" as part of that scheme.  (ECF No. 89 at PageID 1280.)  The Court cannot agree with Defendants that Plaintiff necessarily was informed of Defendants' fee splitting at the relevant time period so as to preclude any deception on Defendants' part.  Unlike with Plaintiff's claim under the fee-splitting statute, the period prior to her receipt of the documents is relevant to her TCPA claim because Plaintiff alleges that "[h]ad Defendants ma[d]e disclosures regarding their fee splitting arrangement, Plaintiff would not have used LVI and would have paid no sums to Defendants," including her $100 deposit.  (ECF No. 75 ¶ 210.) (emphasis added.)  The Court has declined to consider Plaintiff's Consent Form and finds that it cannot determine based on Plaintiff's allegations that Plaintiff received the Invoice and Credit Agreement prior to deciding

to use LVI's services, paying her $100 deposit, or undergoing either of her procedures.

However, although the TCPA "should be construed liberally in order to protect the consumer," Audio Visual Artistry, 403 S.W.3d at 810 (citing Tucker, 180 S.W.3d at 115), Plaintiff simply has not alleged any false representations that Defendants made as to the characteristics of their services.[15]  The Court cannot conclude that any alleged misrepresentations by Defendants as to whom Plaintiff was paying concern the characteristics of Defendants' services within the meaning of § 47-18-104(b)(5).  The LVI Defendants assert:

> Plaintiff's allegations make clear . . . that she agreed in advance to a price for refractive surgery, was charged the agreed-upon amount, and received the surgery for which she paid. She in no way alleges that her vision was not corrected . . . or that there was some deception that led her to obtain a refractive surgery that was contraindicated medically.

(ECF No. 87 at PageID 148–49.)  The Court agrees with Defendants.  Plaintiff does not allege any misrepresentation as to the nature or medical necessity of the procedures she would undergo, the identity or qualifications of the physician who would perform those procedures, nor the ultimate sum she would pay for them.  (See ECF No. 75 ¶¶ 146–58.)  She also does not allege that the overall cost to her misrepresented the value of the services themselves.  Indeed, she alleges that in his private practice "Rynerson made $1500 to $1600 per eye for LASIK surgery" (id. ¶ 117), while with LVI, the Rynerson Defendants' "charges for refractive surgery ranged from $1200 to $1700 per eye."  (Id. ¶ 69.)  Plaintiff does allege that she was informed that Rynerson would "be responsible for her care" when in fact he failed to provide any follow-up care to address her post-

---

[15] Cf., e.g., Acuff v. Baker, No. W2018-00687-COA-R3-CV, 2019 WL 211922, at *20 (Tenn. Ct. App. Jan. 16, 2019) (holding with regard to (b)(5) that Defendant did not misrepresent that she had a professional antique appraiser); Wyndham Vacation Resorts, Inc. v. Consultant Group, No. 2:12-cv-00096, 2014 WL 1922791, at *12 (M.D. Tenn. May 14, 2014) (holding that Defendants' conduct of charging timeshare owners a fee for attorney's help while "knowing no attorney would be involved," using Plaintiff's branding to "create a false impression of affiliation" with Plaintiff, and "convincing timeshare owners that they would facilitate legally binding deed transfers, despite knowing that the conveyance would in fact be fraudulent" "plausibly [fell] within one or more enumerated practices under § 104(b)," including (b)(5)).

operative symptoms of pain and clouded and blurred vision.  (Id. ¶ 146, 157–58.)  Plaintiff does not base her TCPA claim on this representation, however, but only on the alleged "failure to disclose" the fee splitting itself.  (Id. ¶ 209.)  Further, as discussed below, Plaintiff cannot recover in connection with these physical complications.  Thus, Plaintiff's allegations do not come within the ambit of § 104(b)(5) of the TCPA.

### b.  Plaintiff Has Not Adequately Alleged a Resulting Ascertainable Loss

Under the TCPA, a Defendant's violation under § 104(b)(5) must "result" in "an ascertainable loss of money or property . . ." in order to be actionable.  Tenn. Code Ann. § 47-18-109(a)(1).  "[I]t is evident from the language of the statute that to establish a TCPA claim, a plaintiff must demonstrate that it actually has suffered damages that are more than conjectural, and that emanate from the defendant's unfair or deceptive actions."  Waggin' Train, LLC v. Normerica, Inc., No. 1:09-cv-01093, 2010 WL 145776, at *4 (W.D. Tenn. Jan. 8, 2010).  "Plaintiff must also prove that [Defendant's] conduct proximately caused [her] 'ascertainable loss.'"  Humphreys v. Bank of Am., No. 11-2514-STA-tmp, 2013 WL 1967955, at *14 (W.D. Tenn. May 13, 2013) (citation omitted).  See also Cloud Nine, LLC v. Whaley, 650 F.Supp.2d 789 (E.D. Tenn. 2009).  An ascertainable loss must be "'measurable, even [if] the precise amount of the loss is unknown.'"  Humphreys, 2013 WL 1967955, at *14 (quoting Discover Bank v. Morgan, 363 S.W.3d 479, 496 (Tenn. 2012)).  "In short, 'an ascertainable loss occurs in circumstances where a consumer receives less than what was promised."  Id. (quoting Morgan, 362 S.W.3d at 496).

The LVI Defendants claim that Plaintiff cannot make out an ascertainable loss because:

> Plaintiff's allegations make clear . . . that she agreed in advance to a price for refractive surgery, was charged the agreed-upon amount, and received the surgery for which she paid. She in no way alleges that her vision was not corrected, that the fee arrangement between LVI and the Rynerson Defendants caused her to pay more for the surgery than she otherwise would have, that any additional cost was passed on to her through the fee arrangement, or that there was some deception that led her to obtain a refractive surgery

that was contraindicated medically.

(ECF No. 87 at PageID 148–49; see also ECF No. 85-1 at PageID 1207 ("Plaintiff alleges no actual facts establishing any loss as a result of the Rynerson Defendants. Plaintiff received the surgery she paid for. The allegation that the fees she paid did not go to Dr. Rynerson does not constitute a loss . . . .") (citations omitted.))  Plaintiff alleges, however, that she "has suffered an ascertainable loss of money" because "[h]ad Defendants ma[d]e disclosures regarding their fee splitting arrangement, Plaintiff would not have used LVI and would have paid no sums to Defendants." (Complaint, ECF No. 75 ¶ 208, 210.)  The Court finds that Plaintiff's alleged loss in this regard is measurable; namely, the amount she paid for Rynerson's services or $3,718.  (See id. ¶ 150.)  See Harding, 2020 WL 5039439, at *4 (denying dismissal where plaintiff pled misrepresentations that "caused him to be unaware" of vehicle engine's defects and asserted that, "if he had known about the defect, he would not have purchased the car.").

The problem with Plaintiff's claim, however, is twofold.  First, Williams did not "receive[] less than what was promised" in terms of the surgical procedures that she underwent or the price she agreed to pay for them.  Humphreys, 2013 WL 1967955, at *14 (quoting Morgan, 362 S.W.3d at 496).  Despite Plaintiff's attempts to assert otherwise, this is not a case in which Plaintiff agreed to undergo one procedure with a particular doctor but was subjected to, and billed for, a separate, costlier procedure with a different practitioner.  See Proctor, 270 S.W.3d at 58. (See also ECF No. 89 at PageID 1281.)  Second, any loss that Plaintiff suffered was not caused by Defendant's violation of § 104(b) of the TCPA, because, as established above, Plaintiff has failed to allege any such violation.

Plaintiff additionally alleges that she suffered eye pain and irritation and blurred vision that went untreated because Defendants' fee-splitting arrangement allegedly destroyed any "incentive

to provide [] follow-up care to Plaintiff."  (Complaint, ECF No. 75 ¶¶ 7, 50, 157–58.)  The Rynerson Defendants assert that this cannot constitute her "ascertainable loss" under the statute because the language of the TCPA "prohibits a plaintiff from recovering any damages . . . that flow from 'medical and personal injuries.'"  (ECF No. 85-1 at PageID 1208.) (quoting Birdsong v. Eli Lilly and Co., No. 3:10-01182, 2011 WL 1259650, at *3 (M.D. Tenn. Mar. 31, 2011.)) (further citations omitted.)  Courts have indeed interpreted such damages as non-compensable under the TCPA.  See, e.g., Riddle v. Lowe's Home Improvement Centers, Inc., 802 F. Supp. 2d 900, 909 (M.D. Tenn. 2011) ("A TCPA claim must be dismissed where a plaintiff 'seeks to recover [solely] for injuries to his person resulting from [an] alleged violation of the TCPA.'") (citations omitted); Birdsong, 2011 WL 1259650, at *3 (dismissing Plaintiff's TCPA claim for personal injuries allegedly sustained as a result of Defendants' deceptive acts); Howard v. R.J. Reynolds Tobacco Co., No. 1:05CV-27, 2005 WL 2088909, at *3 (E.D. Tenn. Aug. 25, 2005) (holding that the TCPA "does not apply to claims for personal injuries").  Even despite the limitation on recovery for personal bodily injury, Plaintiff has failed to allege that her physical injuries were proximately caused by Defendant's fee splitting arrangement.  The alleged connections between Defendants' fee splitting, physicians' lack of incentive to perform follow-up care, and Plaintiff's untreated post-surgical complications are too attenuated to find relief under the statute.

In sum, Plaintiff has not adequately alleged that she suffered an ascertainable loss as a result of a violation by Defendants under § 104(b) of the TCPA.  Accordingly, the LVI and Rynerson Defendants' Motions to Dismiss are **GRANTED** as to Count 7 of Plaintiff's Complaint.

    iii.    The Rynerson Defendants Are Not Entitled to Attorney Fees and Costs

Finally, the Rynerson Defendants assert that they are entitled to attorney fees and costs under § 47-18-109(e)(2) of the TCPA.  (ECF No. 85-1 at PageID 1208–09.)  Defendants claim

that Plaintiff's TCPA claim is "frivolous and lacks merit" because it "is time-barred, and Plaintiff has suffered no ascertainable loss of money or property because she received the eye surgery she paid for."  (Id. at PageID 1209.)

Section 47-18-109(e)(2) "authorizes a trial court to award attorney's fees and costs to a defendant upon finding that a private TCPA action 'is frivolous, without legal or factual merit, or brought for the purpose of harassment." Milan Supply Chain Solutions, Inc. v. Navistar, Inc., 627 S.W.3d 125, 160 (Tenn. 2021).  The "provision 'is designed to discourage consumers from using the [TCPA] to file frivolous or baseless claims. It is not intended to punish plaintiffs who can demonstrate wrongful acts on the part of defendants, but who are unable to prevail on their claims for other reasons.'"  Id. (citation omitted).  Thus, "the statutory phrase '"without legal or factual merit"' . . . refers to a TCPA claim 'so utterly lacking in an adequate factual predicate or legal ground as to make the filing of such a claim highly unlikely to succeed.'"  Id. (citation omitted).  "Where the Act does not apply to the facts alleged, a claim based on the Act is without legal merit." Glanton v. Bob Parks Realty, No. M2003-01144-COA-R3-CV, 2005 WL 1021559, at *10 (Tenn. Ct. App. Apr. 27, 2005) (citing Wagner v. Fleming, 139 S.W.3d 295, 304 (Tenn. Ct. App. 2004)) (stating that, where plaintiff invoked TCPA "bait and switch" provision but there clearly "was no switching," "[t]he complaint on its face failed to establish a legal predicate for the Tennessee Consumer Protection Act, making the success of that claim highly unlikely")).  Even where (e)(2)'s "prerequisite[s] [are] met, whether or not to award fees is discretionary with the court." Id. at *9 (citing Wagner, 139 S.W.3d at 304).

Plaintiff responds only that attorney fees and costs are not warranted because she has "adequately alleged a claim under the TCPA that is both timely and substantively well-pled." (ECF No. 89 at PageID 1282.)  As discussed above, her TCPA claim is both time-barred and

fails to adequately allege a statutory violation.  However, the Court finds that Plaintiff's claim was not so unlikely to succeed from the outset as to merit an award to Defendants of attorney fees and costs.  Plaintiff alleged that Defendants deceptively misrepresented their services by failing to disclose their fee-splitting arrangement and thus caused Plaintiff to lose money, as she would not have patronized LVI had she known of the fee splitting.  While Plaintiff's claim ultimately proven unsuccessful, the Act is not so clearly inapplicable to the facts of her claim as was the case with the bait-and-switch provision at issue in <u>Glanton</u>.  Further, although the Court has determined Plaintiff's claim to be time-barred, Plaintiff raised legitimate concerns regarding the propriety of deciding the issue at the Motion to Dismiss phase.  In <u>Lapinsky v. Cook</u>, 536 S.W.3d 425 (Tenn. Ct. App. 2016), the court affirmed the trial court's denial of attorney fees on the ground that plaintiff's claim was, by a "close call," not frivolous because she "may not have known [that defendants were not subject to the TCPA] when she filed her suit" despite the trial court's determination as such on summary judgment.  <u>Id.</u> at 447.  Likewise, the Court, in its discretion, holds the instant case to be a "close call" and declines to award attorney fees and costs to the Rynerson Defendants.  Defendants' request for attorney fees and costs is **DENIED**.

## IV.    CONCLUSION

For each of the reasons set forth above, the Rynerson Defendants' Motion to Dismiss is **GRANTED** and the LVI Defendants' Motion to dismiss is **GRANTED**.[16]  As noted above, the Rynerson Defendants' request for attorney fees and costs pursuant to the TCPA is **DENIED**. Accordingly, the Parties' Joint Motion for Status Conference (ECF No. 131) is **DENIED**.

**SO ORDERED**, this 29th day of September, 2021.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE

---

[16] Defendant Audax Group, Limited Partnership has neither participated in bringing the dispositive motions at issue nor been previously terminated from this case.  (See ECF Nos. 77, 85, 87, 88.)  However, Plaintiff asserts no claims against this Defendant, does not mention the Defendant in her Complaint, and excludes the Defendant from the case style on her Complaint. (See ECF No. 75.)  Thus, this Order terminating all other Defendants from the case, Defendant Audax Group, Limited Partnership is hereby terminated and the case closed.